May it please the court, Aaron Solem for Teresa Bierman and eight other independent providers. This case concerns the question of whether the state of Minnesota may extend exclusive representation beyond the bounds of actual employment and designate a monopoly representative for citizens that has the power to lobby and contract for citizens who merely receive a government subsidy. The district held that the state can do so without having to satisfy any First Amendment scrutiny because it found that the individuals are not actually associated with their own representatives or or its actions as their proxy. So according to the district court, an exclusive representative may be imposed for any rational basis. The district court's opinion should be reversed because it is both illogical and limitless. It would allow the government to impose mandatory representatives who have the ability to speak for lobby and contract on behalf of people on practically anyone. So first the decision is logical because the SEIU cannot have the right to contract for individual providers yet not have those providers be associated with the SEIU. It's like saying a principal is not associated with this agent or that my clients would not be associated with my speech as their attorney. So exclusive representation compels a forced association by collectivizing individuals which is what the 11th Circuit recognized in Mulhall with respect to actual employees. However, unlike the actual employees in Mulhall, a state's interest in imposing an exclusive representative is not justified here because these are not actual state employees but independent providers who are not managed, supervised, hired or fired by the government but rather these are generally parents who receive a subsidy to take care of their own kids with disabilities from the state. And so the state has, just as the court found in Harris, the state has no interest in collectivizing employees. The state doesn't have an interest in labor peace when it is not dealing with actual employees. Why isn't this case controlled by Knight? You know, certainly the other courts that have considered this and the other side of the district court have all relied on Knight. But we think this court could read Knight for itself and come to a very different conclusion because what was at issue in Knight was the claim in Knight was very different. Knight never ruled on the issue of whether exclusive representation is constitutional but only whether it is permissible for a state to exclude individuals from a bargaining session. So the employees in that case were faculty members of a university and they had a union and they argued they had a right to participate in these meet and confer sessions that the union organized with their employer. But the court held they did not have a right to participate in those sessions because the government is free to choose to whom it listens. Now in this case it's... They also have this language in there, I guess this is why the other courts might have found it persuasive, but they say the state has in no way restrained employees' freedom to speak or their freedom to associate or not to associate. Isn't your claim that there's an associational restriction here? Our claim is there is an associational restriction here but it's taken on the fact of that exclusive representation itself impinges upon there. That was never at issue in Knight and if you look at Knight, both footnotes 11 and 13, they specifically in footnote 13 in Knight it says this is not dealing with an issue of compelled association, this is dealing with an issue of whether or not someone can maybe excluded under the First Amendment. And so the providers here don't argue that they have any right to participate in the bargaining sessions but rather that the union doesn't have a power, shouldn't have a power under the First Amendment to be able to speak for and importantly contract on their behalf. And getting away from the particulars of Knight, I think in the narrow terms of its decision it's hard to imagine that when the Supreme Court decided in 1984 that professors can be excluded from meet-and-confer sessions, that the Supreme Court meant to sanction the extension of monopoly representation beyond the bounds of actual employment relationships. Counselor, are you familiar with the Janus case that the Supreme Court has on its docket this spring? Yeah, I'm one of the attorneys in it, so yes. What impact, if any, will the court's consideration of that case have on this? Well Janus considers a challenge to forced fees for true employees, so it's a challenge to whether or not a boot should be overruled. So right now I would say that the court on its way to deciding that issue may rule or may have some language on exclusive representation for true employees. And this is because of the way that the court has structured the test traditionally. So if you look at Knox, the Knox test says that mandatory associations are extremely rare, can only be justified by a state interest. Then the challenge to the fee is whether or not that fee is related to the actual mandatory association. So that's why in Abood and that's why in exclusive representation that it's constitutional. So Janus might undo, so Janus might, the question in Janus does not consider whether or not exclusive representation is actually justified by a labor-peace interest, but the court may say something on its way to finding fees unconstitutional if it does so. But you know I think that brings up an important point is that this court should also look at Harris, which was decided by the term a couple, by the court a couple of terms ago. And this is why the district court's opinion is also wrong because it lacks a limiting principle. Harris recognizes that the state has no management interest in independent providers because it doesn't have this ability to supervise, hire, and fire. And there the court limited the ability to impose mandatory fees only to true employees, not to non-employees like the state. So if the district court is correct, there's nowhere essentially to draw the line, which was very important to the court in Harris. The court in Harris said, well if we don't draw the line at actual employees in imposing mandatory fees, we can impose, fees could be imposed on anyone. So the same is true here. The district court is correct and individuals are not associated with the speech of their proxy, a proxy who can bind them through a contract, then exclusive representation can be opposed upon anyone for any reason. And that, that is very detrimental to the First Amendment. What rule do you propose? Well, I propose that the state should go back to what it was doing five years ago before these providers were collectivized. That individuals can be free to speak and choose who represents them to the government. If the government just wants to listen to one lobbying group, it can just listen to one lobbying group. But giving the power of the government to collectivize non-employees and giving that, giving that representative the power to contract on their behalf goes beyond the bounds of the First Amendment. So we would propose is the SEIU can lobby on behalf of its own members, but it shouldn't have the power to be certified as providers, all providers representative, nor should they have the power to do so voluntarily. So unless the court has, I still have seven minutes left, and does the court have any other questions? You're under no obligation to do that for the rest of your time. Okay, well it's been a long day, so I'll reserve the rest of my time for rebuttal. Mr. Gilbert? Good afternoon. May it please the court, my name is Alan Gilbert. I'm a member of the Minnesota Attorney General's Office. The district court decision in this case should be affirmed for two reasons. One is a jurisdictional reason, and that is that there's no standing on the part of plaintiffs to bring this claim. But secondly, on the merits as several courts of appeals have already ruled, there is no merit to the claim being made by the appellant in this case. The other circuits that have come pretty close to this issue have all found standing. The other circuits that have come close to this fifth, second, seventh, they've said there was standing. Your Honor, they have, although they haven't really analyzed it with respect to the facts in this kind of case. In this kind of case, we actually have a situation where there has been a certified union, the union has negotiated a contract, and there is no harm that's referred to by the plaintiff in this case with respect to that contract in particular. The contract actually benefits the plaintiffs. And even more importantly, it benefits tens of thousands of other people who are not plaintiffs to this case. So what really the plaintiff, or the appellant, is saying in this case is that they don't like the public policy of the statute. They don't like the fact that independent contractors can be unionized. And that is not harm that's recognized under Article III in terms of standing. So we have a situation where the plaintiffs can speak, they are not required to associate, they don't have to join the union, they don't have to financially contribute to the union. None of that was analyzed in any of these other cases, Your Honor. And that's the situation we have here. And I submit to you, for the court to take on this issue without some actual harm is contrary to Article III. And as I indicated... The Eleventh Circuit opinion on standing be inconsistent with what you're saying? Are you referring to the Mulhall case? Yes. Your Honor, no. I think it's consistent with it. Even on standing? If you look at Mulhall, it does say that there is some right to freedom of association. And we all agree with that. But what's really significant in that case is that they went further, and they found that there was actual harm in that case. And the reason there was actual harm in that case is because the subject of that lawsuit was a supposedly, allegedly, illegal contract that was which provided a significant advantage to the union to become unionized. And what the court actually said, in the opinion, I have it right here, is that taken together... What page are you on? This is... I'm sorry, Your Honor. 1289. Okay. Taken together, the allegations in Mulhall's complaint yield a strong inference that the organizing assistance of the employer is a critical ingredient for unite's success. And, and this is the critical part, and that, if provided, it will substantially increase the likelihood that Mulhall will be unionized against his will. And then using the language of Article III standing, it says, that probabilistic harm is a cognizable injury for purposes of standing. So they actually did what I'm suggesting the court should do here. And that is, not take at face value that just because there's this freedom of association argument, that that necessarily means that there's harm. You have to go one step further. And that's consistent with the cases of this, of this court. And in particular, the Minnesota Roundtable, I'm sorry, the Missouri Roundtable, we're in Minnesota, the Missouri Roundtable case, and the U.S. Supreme Court case in Clapper. Which, as we indicated in our brief, they specifically require, even in the First Amendment context, that there be actual injury before there's standing. And in the Minnesota Roundtable case, as well as Clapper, again, involving First Amendment rights, they said there wasn't an actual injury, and for that reason they found that there wasn't standing. Are those cases at the pleading stage, like this one? Yes. Yes, Your Honor. I worry a little bit whether this argument conflates the merits and standing. I mean, you're saying, well, they don't, they don't have an associational right, so they aren't injured, so they have no standing. But . . . Your Honor . . . How do you deal with that problem? And I understand your point. And I think that's the difficulty the district court had with this, as well. And I'm looking at the district court opinion right here. This is, this is on page 12 of the opinion. And this is the entirety of the analysis, Your Honor. It says plaintiffs claim that they are injured by the fact that SEIU has been certified as the exclusive representative for the bargaining unit. And then it says the alleged injury to the First Amendment Freedom of Association is caused by the state's certification. That's just a conclusory statement. That's all it is. And it's a, it's really a legal proposition. It isn't a factual proposition that implicates the kind of injury that's required under the, under the Article III standing. And, again, if you look at all the facts, and we've laid them all out in our brief, there's no requirement to join the union. There, there is no infringement of any right of association. There is no infringement. The contract that was actually negotiated subsequent to the certification benefits the plaintiffs. So they cannot and have not pointed to anything that indicates that they actually have harm. And in that regard, I do want to say as well, in one of the preliminary injunction orders of the, of the district court, and this is dated 10-22-14, the court said plaintiffs represent that they have no objection to the state exclusively conferring with SEIU and Medicaid policy and excluding plaintiffs from that discussion. Plaintiffs are not required to join SEIU. They are not required to financially support SEIU. They may petition the state individually or in other groups regarding Medicaid policy. They may express their disagreement with SEIU to the state, to the public, and to anyone else. Essentially saying there's no harm. And then in the order that's the subject of this appeal, he says as well on page 19, similarly in the, I'm sorry, it says for, the court said, for example, the state, quote, is not requiring plaintiffs to join SEIU, financially support SEIU, or otherwise associate with SEIU as a condition of continuing the relationship. On page 15, for example, the court says that under the statute plaintiffs, quote, remain free to petition the state on all issues relating to home care programs and vociferously criticize SEIU. And as I've indicated, the contract itself actually benefits the plaintiffs as well as tens of thousands of other people. So I see my time's up and I'll, my colleague from SEIU can present his argument. Thank you. Mr. Kronland. May it please the court, I'm Scott Kronland representing the union. If the court reaches the merits of this case, the court should conclude that night is controlling and that the Supreme Court has already decided the issue. The Minnesota legislature decided that the best way to set certain employment terms for home care workers would be to have state officials negotiate with a representative chosen by the home care workers. And if an agreement is reached to bring it back to the legislature for its consideration, that process by itself doesn't impinge on anyone's first amendment rights of expressive association. This would be a different case if the plaintiffs were required to do something to support or pay dues to or endorse the union or its positions, but they're not, they're not required to do anything. This would be a different case if the plaintiffs faced some discrimination for not supporting or endorsing the union or its positions, but they don't face any discrimination. It would be a different case if their affirmative rights to speak or petition or somehow constrained, but they're not. This system doesn't impinge on the rights of expressive association at all. The plaintiff's argument is essentially not that they're being required to associate with the union, but that they are being associated with the union in some type of passive sense, even though they don't have to do anything. And the test is whether reasonable people would believe that every member of the bargaining unit necessarily agrees with the union speech. And as the district court observed, as the courts and all of the other circuits have observed, reasonable people would understand that in any kind of democratic system, not everybody is going to agree with the speech of the representative. That's the case that was applied in Rumsfeld v. Fair in the Washington state Grange case, all of the Supreme court's post night cases. Counsel, do you have any familiarity with the issues going to the Supreme court and Janice and whether or not the disposition of that case could have any impact on this? Yes, your honor. Janice is just a case about fees, which are not present here. It's a case like Harris. After the Supreme court granted cert in Janice, it was faced with the petition for certiorari in Hill. That's the seventh circuit case that raises the same issue here. The Hill petitioners passed the Supreme court to hold the petition in Hill pending the outcome of Janice. The Supreme court denied the petition in Hill, which is the third time the Supreme court has denied cert on the exact issue here in the last two years. So there's no indication that the Supreme court is interested in revisiting the issue of exclusive representation and going back to the Brennan Stevens position that was rejected in the night case. Rather, the Supreme court's post night cases have reaffirmed that expressive association isn't an infinitely malleable doctrine, that someone who doesn't have to do anything and who is not being passively associated with the speech of the representative in the sense that people would believe that they agreed with the speech is not having their rights constrained in any way. The government can choose who it wants to listen to. Night was just the flip side of the union in Arkansas state highway employees, which the Supreme court said the state was free to ignore the union and exclusively talked to individuals refused to listen to representatives night. Justice O'Connor explained was just the flip side of that in which the state was interested in dealing with the union to hear its views on issues of policy. And that was not a restraint on anyone's first amendment rights. Unless the court has questions, I know it has been a long day. I see no questions. Thank you, Mr. Kremlin. Mr. Solem, your rebuttal. I just want to make three quick points. And if the court has any other questions, then I'll address those. Uh, the first is on standing. Uh, the state says that my clients have not been harmed. And in fact, they've been benefited by the contract. But I think my clients feel very differently about that for three reasons. One is, uh, the contract requires them to use the union for, uh, grievances. So for example, uh, if you look at section eight of the latest contract, which was submitted in a 28 J, uh, by Mr. Conlon, uh, the after step one of the first of the grievance procedure, the union handles all grievances. So they're required to use the union. Two is the contract doesn't benefit the plaintiffs in raising the minimum wage because that reduces the amount of money that they have to spend on other services. So because the money comes in a lump sum from the state. So the more they have to spend on wages, it doesn't benefit them. And while my clients are all new providers, some new providers may not necessarily want to go to a mandatory orientation that did not exist prior. So those are reasons why the contract harms them. But again, as the district court said, without getting into any of this, this really just conflates the merits with, uh, the issue of standing. And as Judge Carlton pointed out, uh, Mulhall is a standing case. And in Mulhall, I think this, uh, this case, this is even further along than in Mulhall. Because in Mulhall, they found they had standing to challenge a pre-recognition agreement because of the harm that, uh, the, uh, exclusive representation infringes upon employees. Uh, this, the exclusive representation is already present. So under Mulhall, uh, this, this case would be even worse or, or, uh, more ripe. Um, second, uh, in addressing the denial of cert in Hill, DeAgostino and, uh, Jarvis. Um, the denial of cert, uh, is, the court said in, uh, Baltimore Gas, uh, has nothing to do with, uh, the merits of the, uh, of the argument. Uh, the court may well, uh, address exclusive representation somehow in Janus or, you know, because it is dealing with a forced fee, it may not. Uh, but it is possible the court may deal with it on the way to deciding the constitutionality of forced fees for, for full-fledged public employees. Uh, and then lastly, um, it's kind, it's, it's kind of a, uh, an oxymoron in my opinion when, when they say, well, the, uh, employees are represented by the union. The union has the power to contract for them. But no reasonable person would assume that they are associated with the union, if I can give an example. Uh, so for example, when the union goes on strike and, uh, they say, you know, if teachers go on strike, people say, well, the teachers are going on strike in the same way that not everybody, everybody may not know all the teachers don't necessarily support that action. But when you've collectivized everybody, it's assumed that the, that the, uh, union is speaking for the collective. Uh, and lastly, I think this case is very different from Rumsfeld versus Fair, uh, because in Rumsfeld versus Fair, the, uh, the military recruiters were not given the ability to speak for the law schools, nor were they given the ability to contract for the law schools, which is very different than the, uh, than the relationship here between the providers and their certified representative. If, uh, the court has no more questions, I'll yield back my time. Thank you, Mr. Sullivan. Thank you also, counsel, for the appellee. We, uh, appreciate all of your presence this morning for, actually, I guess we're into the afternoon now, uh, for our cases today. Uh, we'll take your case under advisement and render a decision in due course. Thank you.